UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No.: 3:16- cv-471

| | |
|---|---|
| SERUM SOURCE INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GE HEALTHCARE BIO-SCIENCES CORP., GE HEALTHCARE INC., and GENERAL ELECTRIC COMPANY,<br><br>Defendants. | **COMPLAINT** |

Plaintiff Serum Source International, Inc., complains of Defendants GE Healthcare Bio-Sciences Corp., GE Healthcare Inc., and General Electric Company as follows:

**Introduction**

**Parties, Jurisdiction and Venue**

1. Plaintiff Serum Source International, Inc. ("SSI") is a North Carolina corporation with its principal office located in Charlotte, Mecklenburg County, North Carolina.

2. Defendant GE Healthcare Bio-Sciences Corp. is a Delaware corporation, domesticated in North Carolina and Massachusetts, with its principal offices located in Piscataway, New Jersey and Marlborough, Middlesex County, Massachusetts.

3. Defendant GE Healthcare Inc. is a Delaware corporation, domesticated in North Carolina and Massachusetts, with its principal offices located in Princeton, New Jersey and Marlborough, Middlesex County, Massachusetts.

4. Defendant General Electric Company is a New York Corporation, domesticated in North Carolina and Massachusetts, with its principal office located in Fairfield, Connecticut.

5. PAA Laboratories, Inc. ("PAA") was a Massachusetts corporation with its principal office located in Westborough, Worcester County, Massachusetts, that merged with and assumed the name of GE Healthcare Bio-Sciences Corporation on November 4, 2014.

6. GE Healthcare Bio-Sciences Corp., GE Healthcare Inc., and General Electric Company are hereafter referred to, jointly and severally, as "GE" unless identified otherwise.

7. PAA and GE are hereafter referred to, jointly and severally, as "PAA/GE" unless identified otherwise.

8. PAA/GE has engaged in substantial business activity in Mecklenburg County, North Carolina at all times relevant to this action.

9. Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §1332, because Plaintiff is a citizen and resident of the State of North Carolina, and Defendants are foreign companies with their principal offices located in a states other than North Carolina. The amount in controversy exceeds $75,000.

10. Venue in the Charlotte Division of the Western District of North Carolina is appropriate, because Plaintiff is a resident of Mecklenburg County, North Carolina. Upon information and belief, Defendants do business in Mecklenburg County, North Carolina.

## Facts Common to All Claims

### History of SSI

11. SSI is a seller and supplier of premium quality Fetal Bovine Serum ("FBS"). FBS is a liquid biologic medium used in laboratories to promote cell growth.

12. SSI is owned and operated by Jonathan Jacobs and his wife, Mandy Swoyer Jacobs. SSI was previously owned and operated in Pennsylvania by Jonathan's father and mother under the name U.S. Bio-Technologies, Inc. Jonathan and Mandy Jacobs worked for Jonathan's parents in the business for many years before buying the business and moving it to North Carolina in 2006.

13. In and before 2006, SSI and its predecessor company obtained FBS for resale by purchasing raw products and having those products filtered, tested and bottled ("Contract Filtering Services") by independent contractor laboratories such as PAA/GE. It also purchased finished FBS offered by manufactures such as PAA/GE.

14. SSI and its predecessor company have sold their products primarily to large biologic manufacturers and supply houses ("OEMs"), rather than to end users such as research or product development laboratories.

**History of SSI and PAA/GE**

15. Prior to 2006, PAA/GE had a facility in Canada. In August 2006, PAA/GE opened a facility in Massachusetts and sought to expand its services and sales in the United States.

16. In 2006, PAA/GE President/CEO Rainer Burian arranged a meeting with Jonathan and Mandy Jacobs to discuss PAA/GE's interest in expanding business with SSI. In summary, PAA/GE offered to perform Contract Filtering Services for SSI and sell finished FBS to SSI upon favorable terms in exchange for SSI's agreement to make PAA/GE its primary source for these services and sales.

17. At the 2006 PAA/GE-SSI meeting, Jonathan and Mandy Jacobs told Rainer Burian they were concerned that if SSI agreed to the proposed arrangement, PAA/GE would learn the identity of SSI's OEM customers and begin competing with SSI for sales to those customers. Rainer Burian proposed that if SSI would give PAA/GE a list of SSI OEM customers, PAA/GE

would not sell FBS to those SSI customers and if any of those customers approached PAA/GE about sales of FBS, PAA/GE would direct those customers to buy the FBS from SSI. SSI agreed to the offer by PAA/GE and provided PAA/GE with a list of protected customers.

18. SSI fully performed the PAA/GE-SSI Agreement and trusted PAA/GE was abiding by its agreement.

19. In or about 2007, PAA/GE lowered its charge to SSI for Contract Filtering Services.

20. In or about 2008, SSI stopped buying raw FBS materials and contracting with PAA/GE for Contract Filtering Services, because PAA/GE offered to sell PAA FBS that PAA/GE had produced from raw FBS materials purchased by PAA/GE ("finished FBS") at a price lower than the cost to SSI to produce its own finished FBS using the Contract Filtering Services of PAA/GE or any other company.

21. Also, beginning in or about 2008, PAA/GE began providing SSI significantly longer payment terms as an inducement to continue the business relationship.

22. SSI continued to buy finished FBS from PAA/GE, because the price of finished FBS offered by PAA/GE to SSI was consistently lower than that of any other FBS supplier worldwide.

23. The FBS ordered by SSI from PAA/GE, both through Contract Filtering Services and purchases of finished FBS, was for pure, undiluted and unadulterated FBS.

24. The FBS delivered by PAA/GE to SSI, both through Contract Filtering Services and sales of finished FBS, was represented to SSI as being pure, undiluted and unadulterated FBS.

25. The FBS delivered by PAA/GE to SSI, both through Contract Filtering Services and through sales of finished FBS, contained impure, diluted and adulterated FBS.

**Reliance and Investment by SSI in Business Model**

26. Beginning in 2006, SSI relied on the favorable pricing offered by PAA/GE for Contract Filtering Services and finished FBS to invest in and grow SSI.

27. In or about 2008, SSI started to lose large and lucrative standing purchase orders from certain of its OEM customers.

28. Unknown to SSI at the time, PAA/GE had begun to secretly sell FBS to these OEM customers at prices below those offered by SSI.

29. During this same time period, SSI began to lose sales to past and prospective customers due to poor performance of the FBS supplied by PAA/GE to SSI that, unknown to SSI, was impure, diluted and adulterated.

30. These losses of sales caused SSI to suffer unexpected extra inventory.

31. In view of this extra inventory being carried by SSI, PAA/GE offered and SSI accepted payment terms that were longer and therefore more valuable to SSI, as compared to the terms available from PAA/GE's competitor suppliers of FBS.

32. SSI relied on these longer and more favorable payment terms in deciding to continue to use PAA/GE as its primary supplier.

33. SSI relied on the low prices and favorable payment terms in making decisions to invest further in the business including the following investments:

a. Additional staff

b. Employee benefits and performance bonuses

c. Brand image development

(i) Website

(ii) High quality product labels

(iii) Logo re-branding (2011)

(iv) Custom product packaging with brand logo

(v) Promotional items

d. Marketing and Advertising

(i) Google Ad Words (web service advertising of search engine placement)

(ii) Yellow Book Landing page (web service)

(iii) Print materials

(iv) Electronic mail advertising

e. Onsite walk-in freezer unit

f. Office equipment and furniture

g. Commercial vehicles

h. Computer network upgrades

i. Contact management software and software security purchases and upgrades.

**Unfair and Deceptive Trade Practices by PAA/GE**

34. At some point prior to 2013, and unknown to SSI, PAA/GE began to dilute and adulterate the FBS that was the product of the Contract Filtering Services that PAA/GE provided for SSI. PAA/GE willfully concealed this dilution and adulteration from SSI, and SSI was not aware of this practice by PAA/GE. The FBS was diluted with water and other substances by amounts up to approximately fifty percent of the product's composition. Some of the FBS was adulterated with cell growth promoting additives and ingredients derived from adult bovine origin.

35. At some point prior to 2013, and unknown to SSI, and unknown to SSI, PAA/GE began to issue false and misleading certificates concerning the country of origin of the raw materials for the FBS that was the product of the Contract Filtering Services that PAA/GE provided

for SSI. The country of origin determined whether the FBS could be sold in a particular country or to a particular customer and therefore affected the price of the FBS.

36. At some point prior to 2013, and unknown to SSI, PAA/GE began to issue false and misleading certificates of analysis concerning the contents of the FBS that was the product of the Contract Filtering Services that PAA provided to SSI. This was conducted by PAA/GE without the knowledge of SSI. These certificates of analysis were relied upon by SSI and its customers to determine whether the FBS was suitable for a particular need and therefore affected the price of the FBS.

37. At some point prior to 2013, and unknown to SSI, in or about 2006, PAA/GE began to issue false and misleading labels on the FBS that was produced by the Contract Filtering Services and provided to SSI by PAA/GE. The false and misleading information included country of origin of the raw materials and other information about the FBS.

38. SSI reasonably relied on the above referenced certificates of origin, certificates of analysis and labels related to the FBS that was the product of the Contract Filtering Services that PAA/GE provided for SSI.

39. At some point prior to 2013, and unknown to SSI, PAA/GE began to dilute and adulterate the finished FBS it sold to SSI and others. The FBS was diluted with water and other substances by amounts up to approximately fifty percent of the products composition. The FBS was adulterated with cell growth promoting additives and ingredients derived from adult bovine origin.

40. At some point prior to 2013, and unknown to SSI, PAA/GE began to issue false and misleading certificates concerning the country of origin of the raw materials for the finished FBS that PAA/GE sold to SSI and others.

41. At some point prior to 2013, and unknown to SSI, in or about 2006, PAA/GE began to issue false and misleading certificates concerning the country of origin of the raw materials for the FBS that was the product of the Contract Filtering Services that PAA/GE provided for SSI. The country of origin determined whether the FBS could be sold in a particular country or to a particular customer and therefore affected the price of the FBS.

42. At some point prior to 2013, and unknown to SSI, PAA/GE began to issue false and misleading certificates of analysis concerning the finished FBS that PAA/GE sold to SSI and others.

43. At some point prior to 2013, and unknown to SSI, PAA/GE began to issue false and misleading labels on the finished FBS sold to SSI and others. The false and misleading information included country of origin of the raw materials and other information about the FBS.

44. SSI and other parties reasonably relied on the above referenced certificates of origin, certificates of analysis and labels in deciding to purchase finished FBS from PAA/GE.

45. The defective and misrepresented FBS provided by PAA/GE was given to prospective customers of SSI for testing and possible purchase and sold to customers of SSI who accepted the defective and misrepresented FBS.

46. The poor performance of the FBS arising from the defects and misrepresentations caused SSI injury of lost potential sales to customers (the immediate sale at issue and future sales), extra work and cost to SSI in dealing with customers who purchased FBS who had complaints about poor performance of the FBS, and lost future sales to customers who purchased FBS and experienced poor performance of the FBS.

47. SSI has suffered past and ongoing loss of unit sales and profits as a consequence of PAA/GE's conduct.

**PAA/GE's Unfair and Deceptive Trade Practices Enabled PAA/GE to Sell FBS at Below Market Rates While Still Making Increased Profits and Increasing its Market Share of FBS Sales Worldwide**

48. On information and belief, PAA/GE's practice of diluting and adulterating FBS, misrepresenting the country of origin of raw materials and otherwise misrepresenting the contents of the FBS, enabled PAA/GE to sell FBS at below market rates.

49. On information and belief, despite selling FBS at below market rates, PAA/GE made per unit sales profits greater than what it would have made otherwise because its costs of goods for the diluted, adulterated and misrepresented FBS were lower than its competitors costs to produce pure undiluted, unadulterated and truthfully represented FBS.

50. On information and belief, PAA/GE was also enabled to increase its market share of FBS sales worldwide by offering the below market prices thereby reducing sales opportunities to SSI and increasing short term and long term profits to PAA/GE. PAA/GE was able to produce up to twice as much finished product to sell by diluting pure unadulterated FBS.

**PAA/GE Poached SSI's Customers in Violation of its Agreement with SSI**

51. In or about March 2010, SSI questioned PAA/GE about sales of FBS to its list of protected customers.

52. PAA/GE denied making sales of FBS to SSI's list of customers and assured SSI that if any SSI customers approached PAA/GE about buying FBS directly from PAA/GE, PAA/GE would refer them to SSI.

53. SSI assumed PAA/GE was telling the truth concerning the above matters and reasonably relied on PAA/GE's assurances.

**PAA Merges Into GE, GE Assumes PAA'S Liabilities and Together They Continue Unfair and Deceptive Trade Practices**

54. On August 16, 2011, GE announced that it had reached agreement to acquire PAA.

55. According to PAA's website as displayed on April 15, 2013, "Since October 2011 PAA Laboratories is part of GE Healthcare… GE Healthcare is a unit of General Electric Company (NYSE: GE)".

56. Following August 16, 2011, PAA merged into GE and GE assumed the liabilities of PAA alleged in this action.

57. Although the official merger date recorded with the Massachusetts Secretary of State is November 4, 2014, on information and belief, GE assumed control of PAA in or about August to October 2011.

58. The above described conduct of PAA continued after GE assumed control of PAA in or about August to October 2011.

**PAA/GE Reveals Its Unfair and Deceptive Trade Practices And Issues Notices and Recall**

59. PAA/GE published two notices dated April 12, 2013: 1. "Importation Product Information GEHC Ref # 90200"; and 2. "Urgent Medical Device Correction GEHC Ref # 90200". SSI received these notices on April 12, 2013.

60. On April 29, 2013, SSI received revised versions of these two notices that showed the same April 12, 2013 dates of notice.

61. These documents state, inter alia, that beginning in 2008 and continuing into 2013, PAA/GE sold FBS that was adulterated, diluted, miscertified as to country of origin, miscertified as to contents and mislabeled.

62. Up until April 12, 2013, PAA/GE consistently certified to SSI that its facilities operated under "current Good Manufacturing Practices" ("cGMP"), the minimum government

standards for authorization and licensing, to assure that the products are of high quality and do not pose any risk to the consumer or public.

63. SSI relied on PAA/GE's cGMP certifications and communicated those certifications to SSI customers.

64. The April 12, 2013 notices by PAA/GE are admissions by PAA/GE that its cGMP certifications were false.

65. PAA/GE advised April 12, 2013 notice recipients including SSI to advise their customers of these notices and to return affected products to PAA/GE.

66. SSI worked diligently with its customers to carry out the returns to SSI and then to PAA/GE.

67. The above referenced product recall caused a worldwide shortage of FBS. When PAA/GE eventually offered replacement FBS for sale to SSI, the price was over $185.00 per 500 ml as compared to $85.00 at the time of the recall. The price increase was caused by the decreased worldwide supply caused by the PAA/GE recall.

68. The PAA/GE recall caused SSI specific monetary damages of unreimbursed costs for labor and materials in responding to the recall, lost profits on the FBS SSI had to return to PAA/GE, lost profits on future FBS sales due to not having FBS to fulfill orders and the general market disruption caused by the recall, and lost profits due to loss of customers.

**SSI Terminates Tolling Agreement**

69. The parties to this action entered into a Tolling Agreement dated June 23, 2014. A true copy of this Agreement is attached as Exhibit 1.

70. SSI gave proper notice to Defendants on May 24, 2016 of its intent to bring this action and terminate the Tolling Agreement thereby terminating the Tolling Agreement effective thirty days thereafter on June 23, 2016.

**First Claim for Relief:**
**PAA/GE's Practice of Secretly Diluting FBS was an Unfair and Deceptive Trade Practice**

71. SSI repeats and incorporates by reference the prior allegations in this pleading.

72. On information and belief, PAA/GE's practice of secretly diluting FBS that was the product of the Contract Filtering Services that PAA/GE provided for SSI and the finished FBS it sold to SSI and others was an unfair and deceptive act and practice, in and affecting commerce, that proximately caused economic injury to SSI of lost unit sales, lost profits and other economic damages in an amount to be proven at trial, all in violation of N.C.G.S. § 75-1.1 et seq.

**Second Claim for Relief:**
**PAA/GE's Practice of Secretly Adulterating FBS was an Unfair and Deceptive Trade Practice**

73. SSI repeats and incorporates by reference the prior allegations in this pleading.

74. On information and belief, PAA/GE's practice of secretly adulterating FBS that was the product of Contract Filtering Services that PAA/GE provided for SSI and the finished FBS it sold to SSI and others was an unfair and deceptive act and practice, in and affecting commerce, that proximately caused economic injury to SSI of lost unit sales, lost profits and other economic damages in an amount to be proven at trial, all in violation of N.C.G.S. § 75-1.1 et seq.

**Third Claim for Relief:**
**PAA/GE's Practice of Intentionally Misrepresenting the Country of Origin of the Raw Materials of its FBS, and Falsely Certifying Those Misrepresentations, was an Unfair and Deceptive Trade Practice**

75. SSI repeats and incorporates by reference the prior allegations in this pleading.

76. PAA/GE's practice of misrepresenting the country of origin of the raw materials of the FBS it sold to SSI and others, by mislabeling the FBS and otherwise, and falsely certifying those misrepresentations, was an unfair and deceptive act and practice, in and affecting commerce, that proximately caused economic injury to SSI of lost unit sales, lost profits and other economic damages in an amount to be proven at trial, all in violation of N.C.G.S. § 75-1.1 et seq.

**Fourth Claim for Relief:**
**PAA/GE's Practice of Misrepresenting the Contents of its FBS, and Falsely Certifying Those Misrepresentations, was an Unfair and Deceptive Trade Practice**

77. SSI repeats and incorporates by reference the prior allegations in this pleading.

78. PAA/GE's practice of misrepresenting the contents of the FBS it sold to SSI and others, by mislabeling the FBS and otherwise, and falsely certifying those misrepresentations, was an unfair and deceptive act and practice, in and affecting commerce, that proximately caused economic injury to SSI of lost unit sales, lost profits and other economic damages in an amount to be proven at trial, all in violation of N.C.G.S. § 75-1.1 et seq.

**Fifth Claim for Relief:**
**PAA/GE's Practice of Selling FBS at Below Market Rates was made Possible by Secretly Diluting the FBS and Secretly Using Raw Materials from Countries Other Than Those Certified to SSI and Other Buyers. This Practice of Predatory Pricing was Designed to Increase PAA/GE's Market Share of FBS Sales and was an Unfair and Deceptive Trade Practice**

79. SSI repeats and incorporates by reference the prior allegations in this pleading.

80. PAA/GE's practice of selling FBS at below market rates was made possible by secretly diluting the FBS it sold to SSI and others, and secretly using raw materials from countries other than those certified by PAA/GE to SSI and other buyers, was predatory pricing designed to increase PAA/GE's market share of FBS Sales, and was an unfair and deceptive act and practice, in and affecting commerce, that proximately caused economic injury to SSI of lost unit sales, lost

profits and other economic damages in an amount to be proven at trial, all in violation of N.C.G.S. § 75-1.1 et seq.

**Sixth Claim for Relief:**
**PAA/GE's Practice of Secretly Selling FBS to SSI's Customers, While Promising Not To Do So and Falsely Denying those Sales, was an Unfair and Deceptive Trade Practice**

81. SSI repeats and incorporates by reference the prior allegations in this pleading.

82. PAA/GE's practice of selling FBS to SSI's customers, while promising not to do so, and falsely denying those sales was an unfair and deceptive act and practice, in and affecting commerce, that proximately caused economic injury to SSI of lost unit sales, lost profits and other economic damages in an amount to be proven at trial, all in violation of N.C.G.S. § 75-1.1 et seq.

**Seventh Claim for Relief:**
**PAA/GE's Recall of Products Was Caused by its Unfair and Deceptive Trade Practices and That Recall Caused Additional Lost Profits and Other Economic Injury to SSI**

83. SSI repeats and incorporates by reference the prior allegations in this pleading.

84. PAA/GE's recall of products was caused by its unfair and deceptive trade practices and that recall caused additional lost unit sales, lost profits and other economic injury and damages to SSI in an amount to be proven at trial, all in violation of N.C.G.S. § 75-1.1 et seq.

**Eighth Claim for Relief:**
**Negligent Misrepresentation**

85. SSI repeats and incorporates by reference the prior allegations in this pleading.

86. The representations and misrepresentations set forth in the preceding paragraphs of this Complaint were made by PAA/GE negligently.

87. The representations and misrepresentations made by PAA/GE were incorrect, inaccurate, and/or untrue.

88. PAA/GE intended for SSI to rely on those representations and misrepresentations.

89. PAA/GE failed to use reasonable care or competence in obtaining or communicating the information.

90. Plaintiff reasonably relied upon the representations and misrepresentations.

91. Plaintiff has suffered damages as a direct and proximate result of its reasonable reliance upon the representations and misrepresentations of PAA/GE, including additional lost unit sales, lost profits and other economic injury and damages to SSI in an amount to be proven at trial.

**WHEREFORE**, Plaintiff Serum Source International, Inc., prays for the following relief:

1. That it have and recover of the Defendants, jointly and severely, monetary damages in an amount in excess of seventy-five thousand dollars ($75,000.00);

2. That the court treble the compensatory damages found;

3. That all triable issues be decided by a jury;

4. That the costs of this action, including reasonable attorney fees, be taxed to Defendants; and

5. That the court order such other and further relief as it deems just and proper.

This 23rd day of June, 2016.

ESSEX RICHARDS, P.A.

By: /s/ John T. Daniel
John T. Daniel
1701 South Boulevard
Charlotte, NC 28203
Telephone: 704-377-4300
jdaniel@essexrichards.com
State Bar No. 10848
Attorney for Plaintiff

By: /s/ Edward G. Connette
Edward G. Connette
1701 South Boulevard
Charlotte, NC 28203
Telephone: 704-377-4300
econnette@essexrichards.com
State Bar No. 9172
Attorney for Plaintiff